UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

9:18-CV-80515-ROSENBERG

TRIGEANT HOLDINGS,
LTD., *et al.*,   Bankruptcy Case Nos:
                  14-29027-EPK
   Appellants,    15-01634-EPK

v.

BTB REFINING, LLC,

   Appellee.
                                     /

## OPINION AND ORDER

This matter is before the Court upon Appellants' Initial Brief [DE 20] in their appeal of the Bankruptcy Court's Order on Motion for Summary Judgment, Motion to Dismiss, and Motion to Sever; Order Granting BTB Refining, LLC's Motion to Enforce Confirmation Order; Order Granting Plaintiff BTB Refining, LLC's Motion for Summary Judgment on Count III of Amended Complaint; and Final Judgment Against Trigeant, Ltd. The Court has considered Appellants' Initial Brief, Appellee's Responsive Brief [DE 23], Appellants' Reply Brief [DE 24], and the record in this case. For the reasons set forth below, the Court affirms the Bankruptcy Court's Orders and Final Judgment.

## I. FACTUAL BACKGROUND

Trigeant Holdings, Ltd., Trigeant, LLC, and Trigeant, Ltd. ("appellants"), the owners of a refinery and storage facility in Corpus Christi, Texas, filed voluntary Chapter 11 bankruptcy petitions in August and September 2014. DE 15-4 at 1-3, 32; DE 15-6 at 1-3; DE 15-8 at 1-3. Appellants filed a Chapter 11 plan in which they proposed to sell assets and use the proceeds to fully pay their creditors' claims. DE 15-4 at 177-227. As part of that plan, appellants proposed to sell their interest in a Dock Use, Construction, Maintenance and Option Agreement ("Dock

Use Agreement"), an agreement between appellants and an adjoining property owner, Berry GP, Inc. and Berry Contracting, LP, doing business as Bay, Ltd. ("Bay/Berry"). *Id.* at 32-68, 175. The Dock Use Agreement had given appellants the exclusive right to use a dock on the Corpus Christi Ship Channel for shipping and receiving. *Id.* at 32, 35. Bay/Berry filed an Amended Notice of Cure Claim Under Dock Use, Construction, Maintenance and Option Agreement ("Amended Cure Claim") in the bankruptcy proceeding, asserting that Bay/Berry was owed $3,294,010.92 under the terms of the Dock Use Agreement. *Id.* at 101-04.

BTB Refining, LLC ("appellee"), one of appellants' creditors, contended that it had obtained appellants' interest in the Dock Use Agreement in a 2008 foreclosure sale, such that appellants no longer had an interest to sell. *Id.* at 175. The Bankruptcy Court issued an Order Granting Joint Request for Expedited Ruling on Ownership of Bay/Berry Agreements on April 7, 2015. *Id.* at 174-76. The Bankruptcy Court determined that appellants did not have an interest in the Dock Use Agreement to sell because appellee had foreclosed on the interest. *Id.* at 175.

On April 18, 2015, appellants, appellee, and other parties entered into a Settlement Agreement concerning distributions to be made to appellants' creditors. *Id.* at 533-51. The Settlement Agreement contained the following provision ("Section 4.3(b)"):

> Bay/Berry Indemnity. The **"Bay/Berry Claims"** consist of (i) Cure Claims (y) in the amount of $3,294,010.92 as set forth in the *Amended Notice of Cure Claim Under Dock Use, Construction, Maintenance and Option Agreement* (ECF 329), which amends the *Notice of Cure Claim Under Dock Use, Construction, Maintenance and Option Agreement* (ECF 226), and (z) in the amount of $1,328,562.33 as set forth in the *Notice of Cure Claim Under Asphalt and Sale Agreement* (ECF 227); and (ii) unsecured claims (x) in the amount of $1,328,562.33 as set forth [in] Proof of Claim No. 6-1 against Trigeant, (y) in the amount of $1,046,375.86 as set forth in Proof of Claim No. 7-1 against Trigeant, and (z) in the amount of $0, as set forth in Proof of Claim No. 12-1 against Trigeant. The aggregate amount of the Bay/Berry Claims, without duplication and without prejudice to any defenses available to any of the Parties in respect of those Claims, is $4,622,573.25, which amount will be deposited in the Disputed

2

> Claims Reserve in respect of the Bay/Berry Claims. Reorganized Trigeant will indemnify Harry III, BTB, and the other Harry Parties in respect of the Bay/Berry Claims up to the amount of $3,300,000, and any settlement of the Bay/Berry Claims will include a release for Harry III, BTB, and the other Harry Parties. The Harry Parties shall cooperate with the Debtors and Reorganized Debtors to resolve or adjudicate any objection to the Bay/Berry Claims.

*Id.* at 538. The Settlement Agreement also contained a provision ("Section 17.1") requiring "[a]ll notices, requests and other communications made or given in connection with" the agreement to be provided to certain people and entities by hand, electronic mail, facsimile, or overnight delivery. *Id.* at 543. The Bankruptcy Court approved the Settlement Agreement in a Confirmation Order. *Id.* at 805-48.

Bay/Berry withdrew its Amended Cure Claim on May 3, 2015, due to the Bankruptcy Court's determination that appellants did not have an interest under the Dock Use Agreement. *Id.* at 593-94. On May 12, 2015, Bay/Berry filed a complaint against appellee in Texas state court ("the Texas action") for damages in excess of $3,000,000 for breach of the Dock Use Agreement. DE 15-10 at 156-60. The Texas court entered a temporary restraining order that prevented Bay/Berry from terminating the Dock Use Agreement. *Id.* at 367. Appellee was required to pay Bay/Berry $2,200,000 as a condition of entry of the temporary restraining order, and appellee complied. *Id.* at 367, 541. Appellee demanded that appellants reimburse the $2,200,000 in accordance with Section 4.3(b). *Id.* at 371-72. Appellants refused. *Id.* at 371.

Appellee then initiated an adversary proceeding in the Bankruptcy Court to pursue an indemnity claim against appellants. *Id.* at 80-90. Appellants moved for summary judgment in that proceeding, arguing that Bay/Berry's withdrawal of the Amended Cure Claim had nullified their obligation under Section 4.3(b) to indemnify appellee. *Id.* at 167-94. Appellants further argued that the Bay/Berry claims contemplated in Section 4.3(b) and the claims at issue in the

Texas action were "substantively different." *Id.* at 187-92. Finally, appellants argued that appellee had violated Section 17.1 by failing to provide them notice until after making the $2,200,000 payment that appellee would seek indemnification for the Texas action. *Id.* at 192-93.

The Bankruptcy Court denied appellants' summary judgment on April 13, 2016. *Id.* at 600-02. The Bankruptcy Court determined that appellants' interpretation of Section 4.3(b) was untenable because it would render that section meaningless, as appellee never could have been held liable under a claim asserted against appellants in their bankruptcy proceeding. *Id.* at 629-31. The Bankruptcy Court concluded that the Bay/Berry claims contemplated in Section 4.3(b) and the claims at issue in the Texas action were "essentially identical" and that the "notice issue" did not relieve appellants of their obligation under Section 4.3(b) to indemnify. *Id.* at 637-38.

Appellee and Bay/Berry subsequently settled the Texas action for $2,900,000. *Id.* at 772-86. Appellee then moved for summary judgment in the adversary proceeding, seeking indemnification in that amount. *Id.* at 669-80. The Bankruptcy Court granted appellee summary judgment on April 12, 2018, for the reasons that had supported the denial of appellants' motion for summary judgment. *Id.* at 869-71; DE 16 at 21-22. The Bankruptcy Court entered final judgment against appellants in the amount of $2,900,000 in the adversary proceeding. DE 15-10 at 872-73. The Bankruptcy Court also granted appellee's motion to enforce the Confirmation Order in the bankruptcy proceeding, ordering appellants to pay appellee $2,900,000 pursuant to the Settlement Agreement and the Confirmation Order. DE 15-4 at 860-61. This appeal follows.

4

## II. STANDARD OF REVIEW AND JURISDICTION

District court appellate jurisdiction extends to final orders from bankruptcy courts. 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law and mixed questions of law and fact *de novo*. *In re McLean*, 794 F.3d 1313, 1318 (11th Cir. 2015). A district court reviews a bankruptcy court's grant of summary judgment *de novo*. *In re Delco Oil, Inc.*, 599 F.3d 1255, 1257 (11th Cir. 2010).

## III. DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure applies in an adversary proceeding in bankruptcy court. Fed. R. Bankr. P. 7056. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018).

### A. Interpretation of Section 4.3(b)

Appellants contend that the Bankruptcy Court erred in interpreting Section 4.3(b) to require indemnification of the settlement in the Texas action. Appellants argue that a plain reading of Section 4.3(b) reveals that the Bay/Berry claims referenced in that section consisted solely of the Amended Cure Claim and a Cure Claim related to an Asphalt and Sale Agreement.[1] Appellants maintain that, after Bay/Berry withdrew the Amended Cure Claim and the Cure Claim related to the Asphalt and Sale Agreement was resolved, appellee faced no financial

---

[1] The Cure Claim related to the Asphalt and Sale Agreement was separately resolved and is not at issue in this appeal.

exposure related to the Bay/Berry claims referenced in Section 4.3(b), such that appellants' obligation to indemnify was nullified.

Appellee also relies on a plain reading of Section 4.3(b), as well as principles of contract interpretation and the function of an indemnity provision. Appellee contends that Section 4.3(b) protected it from liability for the Bay/Berry claims against appellants that were described in the Amended Cure Claim. Appellee argues that the obligation to indemnify was triggered when Bay/Berry later pursued those claims in the Texas action. Appellee maintains that it never could have been held liable under the Amended Cure Claim—which was filed against appellants in their bankruptcy proceeding—and that, consequently, adoption of appellants' interpretation of Section 4.3(b) would render that section meaningless.

The Settlement Agreement contains a provision requiring the agreement to be construed in accordance with Florida law. DE 15-4 at 544. "A contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party." *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 643 (Fla. 1999). "Indemnity contracts are subject to the general rules of contractual construction; thus an indemnity contract must be construed based on the intentions of the parties." *Id.*; *see also Royal Oak Landing Homeowner's Ass'n v. Pelletier*, 620 So. 2d 786, 788 (Fla. 4th Dist. Ct. App. 1993) (stating that the intentions of the parties to a contract generally govern its construction and interpretation). When determining the intent of contracting parties, "contract provisions should be given their natural and most commonly understood meaning in light of the subject matter and circumstances, and the language being construed should be read in common with the other provisions of the contract." *Gibbs v. Air Can.*, 810 F.2d 1529, 1533 (11th Cir. 1987) (citation omitted) (applying Florida law to interpret the scope of an indemnity provision).

Every provision in a contract should be given meaning and effect. *Am. Employers' Ins. Co. v. Taylor*, 476 So. 2d 281, 284 (Fla. 1st Dist. Ct. App. 1985). "When interpreting contractual provisions, courts will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so." *Bethany Trace Owners' Ass'n v. Whispering Lakes I, LLC*, 155 So. 3d 1188, 1191 (Fla. 2d Dist. Ct. App. 2014) (quotation marks omitted); *see also TRG Columbus Dev. Venture, Ltd. v. Sifontes*, 163 So. 3d 548, 552 (Fla. 3d Dist. Ct. App. 2015) (stating that a court may not interpret a contract so as to render a portion of its language meaningless or useless). A court must construe a contract in accordance with reason and probability and avoid an absurd construction. *Siegel v. Whitaker*, 946 So. 2d 1079, 1083 (Fla. 5th Dist. Ct. App. 2006). Terms should be construed to promote a reasonable, practical, and sensible interpretation. *Id.* at 1083-84.

The Court agrees that adoption of appellants' interpretation of Section 4.3(b) would render that section meaningless as an indemnity provision. Appellants have proposed no scenario in which appellee could be held liable under the Amended Cure Claim, which was a claim against appellants in their bankruptcy proceeding. Thus, appellants do not posit any situation consistent with their interpretation of Section 4.3(b) in which their obligation to indemnify could be triggered. The Bankruptcy Court repeatedly questioned appellants on this point during two summary judgment hearings. *See* DE 15-10 at 613-15, 626-28, 636-37; DE 16 at 14-21. Appellants could not provide an example consistent with their interpretation of Section 4.3(b) that would trigger an obligation to indemnify. *See* DE 15-10 at 614-15, 627-28, 637; DE 16 at 20-21. Appellants similarly provide no such example on appeal, instead arguing that, if Section 4.3(b) is meaningless, appellee "should never have entered into the Settlement Agreement which provided for indemnification of the 'Bay/Berry Claims' in the first instance."

The Court does not adopt an interpretation of Section 4.3(b) that would render the section meaningless, given that there is a reasonable contrary interpretation that is consistent with the contractual language. *See Bethany Trace Owners' Ass'n*, 155 So. 3d at 1191 (stating that "courts will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so" (quotation marks omitted)). The reasonable interpretation is that Section 4.3(b) protects appellee from liability for the claims by Bay/Berry related to the Dock Use Agreement that are described in the Amended Cure Claim. This interpretation is consistent with the language of Section 4.3(b) stating that the Bay/Berry claims consisted, in part, of "the amount of $3,294,010.92 as set forth in" the Amended Cure Claim. Appellants' obligation to indemnify was triggered in the event that those claims were asserted against appellee. The Bankruptcy Court did not err in interpreting Section 4.3(b).

**B.    The Texas action claims**

Appellants contend that, even if their obligation to indemnify was not nullified when Bay/Berry withdrew the Amended Cure Claim, the Bay/Berry claims referenced in Section 4.3(b) and the claims at issue in the Texas action were "substantively different." Appellants propose that the claims at issue in the Texas action did not relate to appellants' breach of the Dock Use Agreement, but rather related to appellee's own breach of the Dock Use Agreement after the 2008 foreclosure sale. Thus, appellants maintain that Section 4.3(b) does not require them to indemnify appellee for the settlement in the Texas action.

Appellee responds that it provided the Bankruptcy Court evidence demonstrating that the Bay/Berry claims referenced in Section 4.3(b) and the claims at issue in the Texas action are identical. Appellee argues that appellants failed to show that there is a factual disputed issue on this point that precluded summary judgment.

Bay/Berry withdrew the Amended Cure Claim of $3,294,010.92 on May 3, 2015, explaining that the withdrawal was due to the Bankruptcy Court's ruling that the Dock Use Agreement was "not property of the estate" at issue in the bankruptcy proceeding. DE 15-4 at 593-94. Bay/Berry filed the complaint in the Texas action nine days later for damages in excess of $3,000,000 for breach of the Dock Use Agreement. DE 15-10 at 156-60. Bay/Berry's initial demand in the Texas action is $3,294,010.92, the amount identified in the Amended Cure Claim. *Id.* at 774. According to the eventual Settlement Agreement in the Texas action, the action is for "claims for breach of contract arising out of and pertaining to the outstanding amounts owed and identified in the Amended Cure Claim." *Id.*

Appellants did not provide the Bankruptcy Court with any evidence that created a disputed factual issue as to whether the $2,900,000 settlement in the Texas action was for the claims set forth in the Amended Cure Claim. Thus, the Bankruptcy Court did not err in concluding that the settlement fell within appellants' obligation under Section 4.3(b) to indemnify appellee.

## C. Application of Section 17.1

Finally, appellants contend that appellee violated Section 17.1 by failing to provide them notice until after making the $2,200,000 payment to Bay/Berry that appellee would seek indemnification for the Texas action. Appellants argue that, had they received earlier notice, they could have intervened in the Texas action to protect their interests. Appellee responds that it provided appellants notice of the Texas action, that appellants could have participated in the action, and that Sections 4.3(b) and 17.1 do not suggest that a lack of notice bars an indemnity claim.

Appellants admitted to the Bankruptcy Court that they did receive notice of the Texas action. *Id.* at 623-25. Moreover, as the Bankruptcy Court pointed out, nothing within Section 17.1 suggests that a failure to give notice relieves a party of any obligation under the Settlement Agreement. *Id.* at 625, 638. The Bankruptcy Court did not err by rejecting appellants' argument that a violation of Section 17.1 relieved them of their indemnity obligation.

## IV. CONCLUSION

For the reasons set forth, the Bankruptcy Court did not err by concluding that Section 4.3(b) obligated appellants to indemnify appellee for the settlement in the Texas action. Thus, the Court **AFFIRMS** the Bankruptcy Court's Order on Motion for Summary Judgment, Motion to Dismiss, and Motion to Sever; Order Granting BTB Refining, LLC's Motion to Enforce Confirmation Order; Order Granting Plaintiff BTB Refining, LLC's Motion for Summary Judgment on Count III of Amended Complaint; and Final Judgment Against Trigeant, Ltd. The Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 15th day of November, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record